**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 16, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

VERONICA GARCIA, on behalf of the
minor children, PCG, PCG, VCG, and
SCG; THE ESTATE OF JORGE
ALBERTO CARRERA ALVAREZ,

     Plaintiffs - Appellants,

v.

UNITED STATES OF AMERICA,

     Defendant - Appellee.

No. 14-2226
(D.C. No. 2:13-CV-00827-WJ-LAM)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **PORFILIO**, and **PHILLIPS**, Circuit Judges.
_____

Veronica Garcia appeals the district court's grant of summary judgment to the

government on her malpractice claims brought under the Federal Tort Claims Act

(FTCA), 28 U.S.C. §§ 1346(b)(1), 2671-80.  Exercising jurisdiction under 28 U.S.C.

§ 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value.  *See* Fed. R. App. P.
32.1 and 10th Cir. R. 32.1.

I

Ms. Garcia filed this suit on behalf of her children and the estate of her

deceased husband, Jorge Alberto Carrera Alvarez,[1] who died two days after he was

diagnosed with acute myeloid leukemia.  On July 5, 2011, Mr. Carrera and

Ms. Garcia went to the Ben Archer Health Center (BAHC) in Las Cruces, New

Mexico.[2]  Mr. Carrera had headaches, fatigue, a fever, and a rash.  He was examined

by a certified nurse practitioner, Lauri Greis, who noted that Mr. Carrera's rash was a

condition known as "purpura" (purple blotches on the skin) of unknown etiology.

Ms. Greis ordered multiple blood tests, a urinalysis, and a chest x-ray.  She instructed

Mr. Carrera to have the tests done that day, refrain from work, rest, and return to the

clinic in the morning.

Ms. Garcia and Mr. Carrera returned to BAHC at 10:00 a.m. on July 6.  They

met with Ms. Greis, who testified that she told them he had leukemia and  needed a

"swift eval[uation]" by a hematologist at the only facility in the state capable of

providing the level of care he required—the University of New Mexico Medical

Center (UNM) in Albuquerque.  Aplt. App. at 147.  After Ms. Greis conferred with

Dr. Robert Francis at UNM, she referred Mr. Carrera to Dr. Francis and Dr. William

_____

[1] We follow the parties' lead and refer to Mr. Carrera Alvarez as "Mr. Carrera."

[2] Mr. Carrera had been treated at BAHC on June 22, 2011, for pain and bleeding from his gums, which was diagnosed as acute necrotizing ulcerative gingivitis.  Ms. Garcia agreed to dismiss her claims based on that treatment but maintained that Mr. Carrera's dental record remained relevant to BAHC's evaluation of him at later appointments.

Adler, and cautioned him that "delay could cause suffering, complications, [and] even death." *Id.*

Ms. Garcia and Mr. Carrera left the clinic, but by 2:00 p.m. they had not arrived at UNM. This prompted calls from Ms. Greis's colleague, Gloria Marmolejo, who spoke to Ms. Garcia at 2:03 p.m. Ms. Marmolejo urged Ms. Garcia "to go to Albuquerque right away" for an "urgent transfusion" or Mr. Carrera could die. *Id.* at 151-52. Ms. Garcia explained, however, that they could not go to Albuquerque because they were undocumented aliens and could not travel with their daughters through the border patrol checkpoint along the route to Albuquerque, in Truth or Consequences, New Mexico. This information was relayed to Dr. Francis, who instructed that Mr. Carrera go to an oncologist at the University Medical Center at Thomason Hospital in El Paso, Texas. Mr. Carrera was admitted to Thomason later that day, but he died on July 8.

Ms. Garcia filed this suit under the FTCA,[3] alleging that BAHC negligently mishandled his treatment.[4] The district court granted summary judgment to the government.

---

[3] The FTCA authorizes persons to sue the United States "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). It is undisputed that BAHC is a qualified entity subject to the FTCA.

(continued)

3

II

"We review the district court's grant of summary judgment de novo[,] . . . view[ing] the evidence and draw[ing] reasonable inferences in the light most favorable to the nonmovant."  *Seifert v. Unified Gov't*, 779 F.3d 1141, 1150 (10th Cir. 2015).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "To defeat a motion for summary judgment, the nonmoving party must show specific evidence that creates a genuine issue as to a material fact."  *Rice v. Office of Servicemembers' Grp. Life Ins.*, 260 F.3d 1240, 1249 (10th Cir. 2001).

One of the district court's grounds for granting summary judgment was that causation had to be proved by expert testimony but Ms. Garcia offered no such testimony.  *See Miller v. United States*, 463 F.3d 1122, 1123 (10th Cir. 2006) (FTCA liability determined under law of state where act or omission occurred); *Gerety v. Demers*, 589 P.2d 180, 191 (N.M. 1978) ("[I]n most medical malpractice suits expert medical testimony must be adduced to establish a standard of care, to assess the doctor's performance in light of the standard, and to prove causation.").  On appeal Ms. Garcia does not dispute the need for expert testimony on causation; and since Mr. Carrera's condition is outside the common experience of lay people, expert

---

[4] Ms. Garcia asserted claims for loss of chance, negligence, loss of consortium, prima facie tort, vicarious liability, medical malpractice, wrongful death, intentional infliction of emotional distress, and negligent infliction of emotional distress.

testimony was clearly necessary, *see Alberts v. Schultz*, 975 P.2d 1279, 1284 (N.M. 1999). Yet Ms. Garcia does not point to any expert testimony to support causation, and we have found none.

Ms. Garcia offered a report from Dr. Robert Gale in which he opined that Mr. Carrera had acute myeloid leukemia, a condition that can probably be treated successfully. But the report did not address whether his condition was still treatable at the time he was seen at BAHC; and at Dr. Gale's deposition, he explicitly testified that he had no opinion on whether the care provided by Ms. Greis and others at BAHC caused Mr. Carrera's injuries and death. Ms. Garcia also offered a report from certified nurse practitioner Christina Sanders. But the report addresses only standard of care, not causation; and at her deposition she declined to offer an opinion on causation, stating, "I don't have a causation opinion. I think the earlier you have access to care, the higher the likelihood that you can have a positive result at the end, but it's outside of my scope of practice to opine on causation in this matter," Aplt. App. at 108. In the absence of any evidence of causation, we must affirm. Although Ms. Garcia argues that there are factual disputes, none are relevant to causation because she has not presented any expert testimony supporting causation under *any* version of the facts.

The judgment of the district court is affirmed.

Entered for the Court

Harris L Hartz
Circuit Judge

5